J-S14025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                 :            PENNSYLVANIA
                                                 :
              v.                                    :
                                                 :
                                                 :
LAWRENCE CUSTIS                            :
                                                  :
                   Appellant               :     No. 1565 EDA 2018

Appeal from the PCRA Order May 11, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008834-2013

BEFORE:   LAZARUS, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED MAY 06, 2019**

Appellant Lawrence Custis appeals *pro se* from the order denying his timely first petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.   Appellant claims trial counsel was ineffective for failing to challenge the weight of the evidence, failing to request a **Kloiber**[1] instruction, and stipulating to the qualifications of an interpreter at trial.  Appellant also raises claims of error related to PCRA counsel's withdrawal and the PCRA court's issuance of notice pursuant to Pa.R.Crim.P. 907.  We affirm.

The PCRA court set forth the relevant facts of this appeal as follows:

> On the afternoon of January 9, 2012, [Appellant] was seen walking down the 1500 block of Lindenwood Street, located in southwest Philadelphia.   There, [Appellant] had a brief conversation with Shantel Hill outside of her home at 1543 South

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954).

Lindenwood Street. Afterward, as Ms. Hill walked towards her home, she heard three gunshots. She turned and saw [Will Street (Decedent)] fall to the ground between two vehicles. She then saw [Appellant] walk between the two vehicles and behind [D]ecedent before he walked away towards Woodland Avenue.

Kevin Johnson, [D]ecedent's first cousin, was inside his home at 1522 South Lindenwood Street when he heard the gunshots. Mr. Johnson ran to his front door and observed several people running around the crime scene. He also heard a female's voice, believed to be Ms. Hill, yell "It's Will." Mr. Johnson got dressed and ran outside, where he heard a male's voice shout, "He's gone, he's gone." Mr. Johnson then ran down the street and saw [D]ecedent lying on the ground, half of his body on the sidewalk and the other half in the street behind a van. Mr. Johnson repeatedly yelled [D]ecedent's name and held onto [Decedent]'s bloodied body. After Mr. Johnson's girlfriend pulled him away from [D]ecedent's body, police officers drove up and detained him for questioning. Upon arrival, the officers observed [D]ecedent lying face down on the ground between two vehicles, bleeding profusely from multiple gunshot wounds. Paramedics arrived and transported [D]ecedent to the hospital where he was pronounced dead.

In April of 2012, three months after the shooting, Daniel Scott gave a statement to detectives. He stated that on January 9, 2012, immediately after the shooting, he saw [Appellant] with a gun in his hand wearing a grey jacket with stripes on the sleeves. Mr. Scott then observed [Appellant] place the gun in his pants, adjust his jacket and walk westbound on Woodland and southbound on 53rd Street (in the direction of Ruby Street). Shortly after the shooting, Gerald Harvey, who knew both [Appellant] and [D]ecedent from the neighborhood, observed [Appellant] on Ruby Street, approximately a block and a half from the crime scene. Mr. Harvey approached [Appellant], who was wearing a grey jacket, and asked him "Why did you kill that boy?" referring to [D]ecedent. [Appellant] began crying and eventually stated that [D]ecedent's brother, Wayne, provided him with some bad pills but he was unable to get to him. Appellant then stated, "I just shot him."

Police officers obtained internal and external video footage from a grocery store located at 5207 Woodland [Avenue], on the northwest corner of Lindenwood and Woodland [Avenue], which depicted the front of the store and the 1500 block of Lindenwood.

The video footage showed [Appellant] walking southbound on Lindenwood Street away from the crime scene immediately after the shooting, and just twenty-five (25) seconds before the first 911 call.

Residents of the 1500 block of Lindenwood Street testified that approximately three weeks prior to the murder, they observed [Appellant] initiate a verbal confrontation with [D]ecedent. While [D]ecedent and [Appellant] were arguing, Michael Gough observed [Appellant] holding a firearm near his leg and heard [D]ecedent tell [Appellant] to calm down. Kevin Johnson testified that during the altercation, he heard [Appellant] state to [D]ecedent, "I'm getting tired of this . . . . I should have shot you last month." That verbal confrontation did not escalate to physical violence because one of [D]ecedent's family members stepped in between the two men and pushed them away from each other.

PCRA Ct. Op., 8/17/18, at 2-3 (quoting Trial Ct. Op., 5/14/15, at 2-4) (record citations, brackets, and some quotation marks omitted).

At trial, the Commonwealth presented Ms. Hill, who testified that she heard gunshots while standing outside her residence on Lindenwood Street. Ms. Hill turned around and saw Decedent on the ground and Appellant walking toward Woodland Avenue. Ms. Hill did not see anyone else near Decedent. On cross-examination, trial counsel questioned Ms. Hill about her testimony at Appellant's preliminary hearing. Ms. Hill acknowledged that at the preliminary hearing, she stated that she "had not seen anything regarding the shooting" and "only heard" about what happened to Decedent. N.T. Trial, 11/4/14, at 139. Ms. Hill explained that she "just wanted to get out of there" when she was testifying at the preliminary hearing. *Id.* at 145.

The Commonwealth also presented Mr. Harvey, who testified that Appellant told him he shot Decedent over "some bad pills." *Id.* at 163. On

cross-examination, Mr. Harvey confirmed that police questioned him about his interactions with Appellant. Mr. Harvey testified that that the police kept him at the station for thirty-six hours during his interview. *Id.* at 166-70.

The Commonwealth also called Mr. Scott, who denied seeing Appellant at the crime scene:

> When the shooting started, I went on the ground. I heard two shots. We hesitated, then more shots came. I ducked back down again. We alls there. (sic) I hear people describe this guy. By the time I get up off the ground, they say what he wearing.

N.T. Trial, 11/5/14, at 5-6. The Commonwealth then moved into evidence Mr. Scott's verbatim statement to police, which was reduced to writing, adopted by him, and signed by him. In the statement, Mr. Scott said, "I heard two gunshots coming from over there and I looked and saw the boy who did the shooting with the gun in his hand. . . ." *Id.* at 10. Despite being confronted with his prior statement, Mr. Scott reiterated that he did not see the shooting or the shooter.

Following trial, a jury convicted Appellant of first-degree murder, possessing instruments of crime, and carrying firearms on public streets in Philadelphia.[2] On November 7, 2014, the trial court sentenced Appellant to an aggregate term of life imprisonment without parole. This Court affirmed the judgment of sentence on May 4, 2016, and Appellant did not seek further review with the Pennsylvania Supreme Court. *Commonwealth v. Custis*, 3223 EDA 2014 (Pa. Super. filed May 4, 2016) (unpublished mem.).

---

[2] 18 Pa.C.S. §§ 2502(a), 907, and 6108, respectively.

- 4 -

Appellant timely filed a *pro se* PCRA petition postmarked May 3, 2017.
The PCRA court appointed counsel, who filed a motion to withdraw and
***Turner***/***Finley***[3] letter.  On April 6, 2018, the court issued a Rule 907 notice
of its intent to dismiss Appellant's petition without a hearing.

Appellant filed a *pro se* response to the Rule 907 notice on April 24,
2018.  Appellant raised multiple issues, including claims of ineffective
assistance of all prior counsel for failing to challenge the weight of the
evidence, failing to request a ***Kloiber*** instruction, and stipulating to the
qualifications of an interpreter at trial.  Appellant also argued that PCRA
counsel's representation was deficient because he failed to challenge prior
counsels' ineffectiveness on the aforementioned bases.  Further, Appellant
asserted that PCRA counsel "merely conducted a cursory review based upon
the boilerplate petition without any motivation to do anything other than file
a no-merit letter in the capacity of an adversary rather than advocate."  *Pro
Se* Response, 4/24/18, at 33.

On May 11, 2018, the PCRA court dismissed Appellant's PCRA petition
and permitted PCRA counsel to withdraw.  Appellant timely filed a *pro se* notice
of appeal and court-ordered Pa.R.A.P. 1925(b) statement of errors complained
of on appeal.  The PCRA court filed a responsive opinion, concluding
Appellant's claims of ineffectiveness lacked arguable merit.

Appellant now raises seven questions for our review:

_____

[3] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and
***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

1. Did the PCRA court err when it failed to grant leave to amend the PCRA petition in order to achieve substantial justice? And did the PCRA court err when it failed to address the defects and state the reasons for the notice to dismiss the PCRA petition without an evidentiary hearing?

2. Was the PCRA court's notice to dismiss inadequate because [the court] failed to thoroughly review the PCRA petition, failed to conduct an independent review of the record, and failed to address the issues of material fact? And was [the court's] notice lacking without an analysis pursuant to [relevant case law]?

3. Was PCRA counsel . . . ineffective for failing to argue direct appeal counsel's . . . ineffective assistance and trial counsel's . . . ineffective assistance for all failing to argue a weight of the evidence claim . . . ?

4. Was PCRA counsel ineffective for failing to argue direct appeal counsel's failure to argue trial counsel's ineffective assistance for failing to request a **Kloiber** instruction . . . ?

5. Did the PCRA court abuse its discretion for failing to schedule an evidentiary hearing on the issue of trial counsel's ineffective assistance for stipulating to the uncertified sign language interpreter? And was PCRA counsel ineffective for failing to litigate this issue in an amended PCRA petition?

6. Was trial, direct appeal, and PCRA counsel ineffective for failing to argue that the Commonwealth's expenses for the crime lab user fee used by the . . . state police was not part of the "costs" of [Appellant's] prosecution in the amount of $25,000? Did the lower court [err] when it refused to provide a copy of the invoice pertaining to this crime lab fee? Was this prejudicial to [Appellant] being that he was *in forma pauperis* . . . ?

7. Should this Court grant [Appellant] a remand in order for [Appellant] to amend the [Rule] 1925(b) statement when [the PCRA court] disclosed facts in his [Rule] 1925(a) opinion that were not disclosed prior to the opinion? And should the Superior Court remand the certified record back to the Philadelphia County Court of Common Pleas in order for the attorneys of record and the

Commonwealth to provide [Appellant] with the entire discovery file including the discovery provided to trial counsel?[4]

Appellant's Brief at 10-11 (full capitalization omitted).

Appellant's first two issues are related, and we address them together. Appellant complains that the PCRA court's Rule 907 notice "was nothing more than a form," indicating that the court intended to dismiss Appellant's petition based upon PCRA counsel's *Turner*/*Finley* letter. *Id.* at 21. Appellant insists that the PCRA court's "wholesale adoption" of the *Turner*/*Finley* letter is unacceptable, and the court should have provided its own independent analysis regarding any defects in Appellant's petition and its reasons for dismissal. *Id.* Absent proper Rule 907 notice, Appellant maintains that he is entitled to an evidentiary hearing and an opportunity to amend his petition. *Id.*

Our review of the denial of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (quotation marks and citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citation omitted). We review "the PCRA court's legal conclusions *de novo*." *See Miller*, 102 A.3d at 992.

---

[4] In the statement of questions presented, Appellant frames his final issue as a request to amend his *pro se* Rule 1925(b) statement. Nevertheless, the argument section in Appellant's brief actually presents a challenge to PCRA counsel's stewardship. *See* Appellant's Brief at 50-52.

Pennsylvania Rule of Criminal Procedure 907 governs the disposition of a PCRA petition without a hearing as follows:

**Rule 907.  Disposition Without Hearing**

Except as provided in Rule 909 for death penalty cases,

(1) the judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s).  If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal.  The defendant may respond to the proposed dismissal within 20 days of the date of the notice.  The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue.

Pa.R.Crim.P. 907(1).

"Rule 907 pre-dismissal notice affords a petitioner the opportunity to seek leave to amend his petition and correct any material defects.  The ultimate goal of this process is to permit merit review by the PCRA court of potentially arguable claims." *Commonwealth v. Weimer*, 167 A.3d 78, 86 (Pa. Super. 2017) (citations omitted), *appeal denied*, 176 A.3d 838 (Pa. 2017).  Nevertheless, a petitioner is not entitled to relief based on a PCRA court's failure to explain the reasons supporting its Rule 907 notice where the court provides an opportunity to amend the *pro se* petition, grants the petitioner leave to submit *pro se* supplements, and accepts filings submitted on the petitioner's behalf following the issuance of Rule 907 notice.  *See id.* (citing *Commonwealth v. Albrecht*, 720 A.2d 693, 709-10 (Pa. 1998)

(stating that under Pa.R.Crim.P. 1507(a), the predecessor to Rule 907, there was no defect in notice of intent to dismiss a PCRA petition without hearing where the petitioner was afforded both further proceedings and the opportunity to present arguments in support of his petition)).

Instantly, the PCRA court issued a Rule 907 notice, indicating that PCRA counsel had determined that Appellant's issues were meritless. The notice also provided Appellant with the opportunity to file a *pro se* response within twenty days. **See** Rule 907 Notice, 4/6/18, at 1. The notice included no further explanation of the PCRA court's reasons in support of dismissal. Despite the PCRA court's failure to provide a statement of reasons in support of the issuance of Rule 907 notice, Appellant submitted a *pro se* response that included multiple, layered ineffectiveness claims.

Under these circumstances, the PCRA court satisfied the requirements of Rule 907 by providing Appellant with notice of its intent to dismiss, as well as the opportunity to present additional arguments in support of the petition. **See Albrecht**, 720 A.2d at 709-10; **Weimer**, 167 A.3d at 86; **see also Commonwealth v. Ousley**, 21 A.3d 1238, 1246 (Pa. Super. 2011) (holding the petitioner received sufficient Rule 907 notice where the notice stated that PCRA court intended to dismiss the PCRA petition for the reasons discussed in counsel's "no-merit" letter). Therefore, the PCRA court did not commit legal error and Appellant is not entitled to relief on his first two claims. **See Miller**, 102 A.3d at 992.

In his third issue, Appellant contends his convictions are "based on pure speculation and conjecture." Appellant's Brief at 25. Appellant alleges the Commonwealth's evidence was weak, because (1) Mr. Johnson provided irrelevant "hearsay testimony" when he testified that Appellant said, "I should have shot you last month" to Decedent; (2) Ms. Hill provided inconsistent statements; (3) Mr. Harvey's statement to police was coerced; and (4) Mr. Scott did not actually identify Appellant as the shooter. *Id.* at 27-40. Appellant insists trial counsel lacked a reasonable basis for failing to challenge the weight of the evidence, PCRA counsel lacked a reasonable basis for failing to develop this claim in an amended petition, and counsels' inaction caused him to suffer prejudice. *Id.* at 27-28. Appellant concludes trial counsel was ineffective for failing to challenge the weight of the evidence. *Id.* at 24.

We presume that the petitioner's counsel was effective. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). To establish a claim of ineffectiveness, a petitioner "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Turetsky*, 925 A.2d 876, 880 (Pa. Super. 2007) (citation omitted). A petitioner must establish (1) that the underlying claim has arguable merit; (2) that counsel lacked a reasonable basis for his action or inaction; and (3) but for the act or omission in question, the outcome of the proceedings would have been different. *Commonwealth v. Washington*, 927 A.2d 586, 594

(Pa. 2007). "A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs." ***Id.*** (citation omitted).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.] Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Smith***, 167 A.3d 782, 788 (Pa. Super. 2017) (citations and quotation marks omitted), *appeal denied*, 179 A.3d 6 (Pa. 2018).

The following principles apply to challenges to the weight of the evidence:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [fact-finder's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Landis***, 89 A.3d 694, 699 (Pa. Super. 2014) (citation omitted).

We have also explained that

> [a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court

- 11 -

is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

*Id.* (citation omitted).

Instantly, the PCRA court concluded that a challenge to the weight of the evidence supporting Appellant's convictions would have been frivolous.[5] *See* PCRA Ct. Op. at 8. The PCRA court further concluded that trial counsel cannot be considered ineffective. *Id.* After a thorough examination of the record, including the transcripts of Appellant's jury trial, we observe that the record supports the PCRA court's ruling. *See Miller*, 102 A.3d at 992; *Landis*, 89 A.3d at 699. Therefore, Appellant's third issue warrants no relief.

In his fourth issue, Appellant emphasizes Mr. Scott's testimony that he did not see the shooter, because Mr. Scott dropped to the ground upon hearing the gunshots. Appellant's Brief at 46-47. In light of this testimony, Appellant argues that trial counsel should have requested a *Kloiber* instruction.[6] *Id.* at

---

[5] The judge who presided over Appellant's PCRA proceedings also presided over Appellant's jury trial.

[6] Appellant's brief includes an argument that the testimony from Ms. Hill, Mr. Johnson, and Mr. Harvey also created the need for a *Kloiber* instruction. Appellant's Brief at 43. In his *pro se* response to the Rule 907 notice, however, Appellant's argument is limited to Mr. Scott's testimony only. *See Pro Se* Response at 27-29. Therefore, we address Appellant's argument on appeal only as it pertains to the necessity of a *Kloiber* instruction for Mr. Scott's testimony. *See Ousley*, 21 A.3d at 1242 (reiterating that this Court cannot consider issues not raised in the PCRA court).

48. Appellant insists trial and direct appeal counsel lacked a reasonable basis for failing to challenge the trial court's omission of a **Kloiber** instruction, PCRA counsel lacked a reasonable basis for failing to develop this claim in an amended petition, and counsels' inaction caused him to suffer prejudice. **Id.** at 43-44. Appellant concludes all prior counsel were ineffective for failing to challenge the omission of a **Kloiber** instruction. **Id.** at 48.

"A **Kloiber** charge is appropriate where there are special identification concerns: a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past." **Commonwealth v. Reid**, 99 A.3d 427, 448 (Pa. 2014) (citations omitted).

> Our case law makes clear that the need for a **Kloiber** charge focuses on the ability of a witness to identify the defendant. Our Commonwealth's decisional law has long held that prior inconsistent statements based upon fear of endangerment do not equate to a prior failure of ability to identify a defendant.

**Id.** at 449 (citations omitted). "Unlike the typical **Kloiber** situation, where there is a damaging in-court identification of the accused, the same type of concerns are not present where a witness declines to identify the defendant in court." **Commonwealth v. Sanders**, 42 A.3d 325, 335 (Pa. Super. 2012).

Instantly, Mr. Scott did **not** identify Appellant as the shooter at trial, and he claimed that he did not witness the shooting. **See** N.T. Trial, 11/5/14, at 4-23. Rather, the Commonwealth admitted into evidence Mr. Scott's prior statement to police, wherein he claimed to have seen the shooter. **Id.** at 6; Commonwealth's Trial Ex. C-35. When confronted with his prior inconsistent

statement, Mr. Scott admitted that he did not want to testify at trial.  **See** N.T. Trial, 11/5/14, at 13.  Because Mr. Scott did not actually identify Appellant as the shooter, a **Kloiber** instruction was unnecessary.  **See Reid**, 99 A.3d at 448; **Sanders**, 42 A.3d at 335.  Consequently, there is no arguable merit to Appellant's claim, and counsel cannot be considered ineffective on this basis.  **See Smith**, 167 A.3d at 788.

In his fifth issue, Appellant contends that Commonwealth witness Michael Gough utilized a sign language interpreter (Interpreter) to testify at trial.  Appellant's Brief at 48.  Although Interpreter testified that he is a master certified sign language interpreter, Appellant baldly asserts that Interpreter lied about his qualifications.  **Id.** at 49.  To support this claim, Appellant's brief includes a copy of the 2016 interpreter roster for the Administrative Office of Pennsylvania Courts (AOPC).  **Id.** at Attach. C.  Appellant complains that Interpreter is not listed on the attached roster.  **Id.** at 49.  Appellant insists that trial and direct appeal counsel lacked a reasonable basis for failing to challenge Interpreter's qualifications, PCRA counsel lacked a reasonable basis for failing to develop this claim in an amended petition, and counsels' inaction caused him to suffer prejudice.  **Id.**  Appellant concludes all prior counsel were ineffective for failing to challenge Interpreter's qualifications.  **Id.**

Instantly, Appellant relies on the fact that Interpreter is not included on AOPC's 2016 interpreter roster.  This ignores the fact that Appellant's trial occurred in 2014, and Appellant has provided no evidence regarding

Interpreter's status on AOPC's roster at that time.[7]  Moreover, Interpreter was sworn in at trial and confirmed that he was a certified sign language interpreter.  *See* N.T. Trial, 11/5/14, at 107.  The PCRA court also noted, "[Appellant] provides no evidence for how the interpreter caused him prejudice.  There is nothing in the record indicating that the interpreter did not properly perform his duty."  PCRA Ct. Op. at 9.  The records supports the PCRA court's determination, and we conclude there is no arguable merit to Appellant's claims of ineffectiveness in conjunction with Interpreter's role at trial.  *See Smith*, 167 A.3d at 788.

In his sixth issue, Appellant presents an ineffectiveness claim based upon counsels' failure to challenge certain court costs.  Although Appellant includes this claim in his statement of questions presented, the brief does not contain a separate argument section developing this issue.  Consequently, Appellant's sixth issue is waived.  *See Commonwealth v. Freeman*, 128 A.3d 1231, 1249 (Pa. Super. 2015) (explaining that the failure to develop a legal argument in support of a claim results in waiver of the issue).

In his final issue, Appellant attacks PCRA counsel's representation.  Appellant's Brief at 51.  Appellant contends PCRA counsel filed a *Turner*/*Finley* letter "based upon [Appellant's] lack of specifics" to support the legal claims Appellant wished to pursue.  *Id.*  Appellant complains that

---

[7] In its brief, the Commonwealth includes a copy of AOPC's 2013 interpreter roster, which lists Interpreter as a member of the program at that time.  *See* Commonwealth's Brief at Ex. A.

PCRA counsel "did not investigate beyond [Appellant's] boilerplate assertions [included] within the [original *pro se* PCRA] petition." **Id.** Appellant argues that PCRA counsel "failed to respond to [Appellant's] correspondence," and "never inquired into the underlying facts supporting [Appellant's] legal claims." **Id.** Further, Appellant asserts that PCRA counsel's **Turner**/**Finley** letter "crossed the line from advocate to adversary." **Id.** at 52.

Upon receiving the **Turner**/**Finley** letter, Appellant maintains that he "researched the record and the law," and he submitted the *pro se* response to the Rule 907 notice that properly developed the legal arguments in support of his PCRA claims. **Id.** at 51. Because he adequately developed his claims without PCRA counsel's assistance, Appellant insists he should have an opportunity to make additional amendments to his PCRA petition with new counsel. **Id.** at 50. Appellant also seeks to raise new claims not mentioned in the *pro se* response to the Rule 907 notice, including a challenge to the fact that the Commonwealth "used 'one' photo of [Appellant] when conducting identification line-up[s,] and this was very prejudicial to" Appellant. **Id.** at 53.

> To withdraw from representation at the PCRA court level,
>
> counsel must review the case zealously. **Turner/Finley** counsel must then submit a "no-merit" letter to the trial court . . . detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

> Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

***Commonwealth v. Wrecks***, 931 A.2d 717, 721 (Pa. Super. 2007) (citations omitted).

Instantly, PCRA counsel substantially complied with the requirements of withdrawing under ***Turner***/***Finley***. PCRA counsel filed a motion to withdraw as counsel and sent Appellant (1) a copy of his "no-merit" letter detailing PCRA counsel's review of the matter and reasons for determining that Appellant's issues lack merit, (2) a copy of the motion to withdraw, and (3) a statement advising Appellant of his right to proceed *pro se* or with private counsel. ***See*** "No-Merit" Letter, 3/24/18, at 10; Mot. to Withdraw, 3/24/18, at 2-3; ***see Wrecks***, 931 A.2d at 721. Moreover, PCRA counsel explained that he reviewed the entire record and corresponded with Appellant regarding the issues Appellant wanted to raise.

Appellant challenged PCRA counsel's conclusions in his *pro se* response to the Rule 907 notice. The PCRA court evaluated all of the claims presented in Appellant's petition and *pro se* response, and it determined that they lacked merit. ***See*** PCRA Ct. Op. at 7-12. We cannot say that the PCRA court erred in its analysis. ***See Miller***, 102 A.3d at 992. On this record, PCRA counsel

properly withdrew representation, and Appellant is not entitled to relief on this basis.[8]

We conclude Appellant is not entitled to relief on his claims, and the PCRA court did not commit legal error related to the dismissal of Appellant's PCRA petition. Accordingly, we affirm the order dismissing Appellant's PCRA petition. *See id.*

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/19

---

[8] To the extent Appellant alleges that the Commonwealth showed a single photo of Appellant to a witness for identification purposes, we emphasize that Appellant has failed to develop this claim as a challenge to trial counsel's stewardship. Rather, Appellant baldly asserts that the Commonwealth violated his due process rights. *See* Appellant's Brief at 54. As presented, Appellant could have raised this claim earlier, and it is now waived under the PCRA. *See* 42 Pa.C.S. § 9544(b) (stating "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding").